File date 6/11/18 per order allowing relation back date

~~6/12/2018~~ 9:25 AM
18CV24050

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

KANAAN KANAAN,

    Plaintiff,

vs.

PORTLAND STATE UNIVERSITY,

    Defendant.

Case No.

**COMPLAINT**

(Race/National Origin Discrimination/ Retaliation; 42 USC § 1981)

Damages $410,000.00

**CLAIMS NOT SUBJECT TO MANDATORY ARBITRATION**

**JURY TRIAL REQUESTED**

Plaintiff demands a jury trial and alleges:

1.

Defendant Portland State University, (herein "PSU"), is a public university located in Oregon, and doing business in the State of Oregon, Multnomah County.

2.

Plaintiff Kanaan Kanaan (herein "Kanaan"), at all material time hereto, is a male Oregon resident of Middle Eastern descent, residing in Multnomah County.

3.

Kanaan was employed by PSU from 2002 to 2010 as an art professor on a part-time year to year basis. In January 2011, he was hired into the newly created Middle Eastern Student

Retention Specialist position at the Office of International Affairs ("OIA"). His direct supervisor was Jill Townley, Assistant Director of International Student Life. Her supervisor was Judy Van Dyck, Director of International Student Services.

4.

The new Middle Eastern Student Retention Specialist position required development of a program compatible with PSU's system including existing programs to help both PSU and Intensive English Language Program ("IELP") students. Kanaan created programs to support the Middle Eastern students arriving and attending PSU, including but not limited to orientations in Arabic for those with no prior knowledge of English (IELP students) and guidelines to help students maintain their GPAs and visas statuses, all without any templates or guidelines from PSU for the programs and services to be overseen by the Middle Eastern Student Retention Specialist. Kanaan received little support in this process.

5.

Kanaan proposed a Middle Eastern cultural presentation for the Committee of International Recruitment and Retention ("CIRR"), as a way to provide a better understanding of Middle Eastern cultures to assist Respondent in recruitment and retention of this population. Kanaan's proposal was declined and his efforts at cultural training were met with overt and antagonistic resistance. He was excluded from Student Life Team meetings and required to meet weekly with Townley and Van Dyck to discuss his performance and progress.

6.

Kanaan requested PSU hire a work-study volunteer to assist him. The process took approximately 6 months. In contrast, when a white female coworker requested an assistant, one was hired for her within a few weeks.

7.

Just before the 2014 Winter Term, Kanaan complained to PSU that the contracts for Middle Eastern students who came here to learn with no prior knowledge of English were in

English only. The contracts specified that these students would have to repeat (and pay again for) the *entire* term, were they to fail one class. The contract also mandated them to pay an extra $800 for unspecified "extra support." Kanaan complained to PSU administration of the disparate ways that Middle Eastern students were being treated and asked to provide the students an Arabic translation of the contract. PSU initially refused, then delayed, and eventually provided Arabic-speaking students with a limited explanation of the contract.

8.

Throughout the course of Kanaan's employment as the Middle Eastern Student Retention Specialist, Defendant discriminated against him by excluding him from Student Life Team meetings and withholding information from him about upcoming seminars and conferences; telling him that they were surprised he lasted so long in his employment with PSU; denying his agenda items in meetings; telling him to turn away "non-matriculated" (*aka* Intensive English Language Program, "IELP") Middle Eastern students, even though it is culturally insulting to do so; never giving him a name tag while providing one instantly to colleagues hired before and after him; not praising his work despite having caused around 800 student visits and helping hundreds of these students, while praising a white employee after she solved one issue with a Middle Eastern student; subjecting him to nebulous accusations of being "hard to work with" and criticizing him after he requested help and to be heard and included.

9.

Defendant further discriminated against Kanaan by telling him his office decor was "too Middle Eastern" and requesting he make it less so, then packing all his Middle Eastern artifacts into boxes when he was attending a conference around May 13, 2014; negatively stereotyping his passion for his work as "threatening;" monitoring his comings and goings and requiring he call or email every day to announce his arrival in the office while not requiring this of his non-Middle Eastern colleagues; telling him they would install a window on his office door to monitor his activities in his office, while not treating his non- Middle Eastern coworkers in a similarly

1  suspicious manner; and moving Kanaan into an office that caused him immense stress and
2  refusing to move him into a vacant office that was more suitable.

3                                          10.

4       Kanaan took some time off for vacation in the summer of 2013, during which he grew a
5  beard. Van Dyke asked one of the Middle Eastern students what "[was] up with the beard."

6                                          11.

7       In September of 2013, Kanaan filed a complaint against Jill Townley with PSU's Office
8  of Equity and Compliance. In October of 2013, Ramon Diaz from Defendant's Human Resources
9  department contacted him to conduct a mediation between him and Townley. At the end of the
10 mediation, he was threatened with "disciplinary action."

11                                         12.

12      In December, 2013, PSU informed Kanaan that it would not be renewing his contract at
13 the end of June.

14                                         13.

15      On January 17, 2014, Chief Campus Public Safety Officer Phil Zerzan informed Kanaan
16 that PSU was concerned about "threats" he had allegedly made. Kannan had made no threat. He
17 had expressed frustration to a former colleague concerning PSU's hostile work environment and
18 the stated that he would not tolerate the discrimination against himself and the Middle Eastern
19 student population he was hired to support. On that same day, Phil Zerzan asked Kanaan if he
20 wanted to work from home.

21                                         14.

22      On January 21, 2014, PSU called Kanaan to meet with Ron Witczak and Ramon Diaz at
23 the Human Resources office. Kanaan expressed issues he was having at OIA and the possibility
24 of working from home. Witczak and Diaz left the room and came back with a letter that stated it
25 had become "difficult for [Kanaan] to continue working at PSU" and that "work assignment will
26 not require [his] presence at the University, and [that day was his] last day of work in the office."

PSU specified Kanaan was required to work from home and that he would not be permitted in his office or to have access to his work email. PSU then asked him to surrender his keys and badge and PSU had him escorted out by security.

15.

Following the meeting described in paragraph 12, Kanaan filed a second complaint with PSU's Office of Equity and Compliance.

16.

Thereafter, based on information and belief, PSU contacted Portland Community College (herein "PCC") and induced it to cancel Kanaan's pre-arranged visit for English Classes for Middle Eastern students and interfered with his subsequent job opportunities at PCC as an International Student Activities Coordinator.

17.

Defendant continued to retaliate against Kanaan throughout Spring term of 2014, including interfering with his participation in a joint research project between Qatar University and PSU, by telling the project leader that he would be "difficult" to work with; refusing to provide space where he could meet with students despite his continued requests, and making it difficult for Kanaan to contact the students he was hired to support.

18.

As a direct result of Defendants' conduct, plaintiff has suffered lost wages in an amount to be determined by the jury at trial, which amount is alleged to be $160,000 less mitigation.

19.

As a further result of defendant's actions, plaintiff suffered emotional distress in an amount to be determined by a jury at trial, which amount is alleged to be $250,000.

///
///
///

## FIRST CLAIM FOR RELIEF  (42 USC § 1981)

### Civil Rights - Violations

Plaintiff realleges and incorporates paragraphs 1 through 19 above.

19.

As described herein, Defendant impaired Plaintiff's contract rights on the basis of race, ethnicity or national origin in violation of 42 USC §1981.

20.

As described herein, Defendant retaliated against Plaintiff in the terms and conditions of his employment due to his complaints of harassment, discrimination based on race or ethnicity, and retaliation in violation of 42 USC §1981.

21.

As described herein, Defendant retaliated against Plaintiff by taking actions against him which would deter a reasonable person from complaining in violation of 42 USC §1981.

22.

Plaintiff is entitled to reinstatement as a result of Defendant's unlawful employment practices and injunctive relief ordering Defendant to cease and desist its illegal practices under each above cited statute and to take appropriate steps to ensure such conduct does not occur again.

23.

Plaintiff is entitled to reimbursement of his reasonable attorneys' fees and costs pursuant to 42 USC § 1988.

WHEREFORE, Plaintiff prays for his costs and disbursements incurred herein and for the following in accordance with the proof at trial:

1. Economic damages;
2. Non-economic damages;

3. Reinstatement or future lost wages;

4. Reasonable attorneys' fees and costs;

5. Prejudgment and post judgment interest as appropriate and allowed by law;

6. On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving a payment of wages over the applicable time frame;

8. Any and all other relief as the jury and this court may deem proper.

DATED this 11th day of June, 2018.

                                       LAW OFFICES OF SUE-DEL MCCULLOCH LLC

                                       By: _____
                                       Sue-Del McCulloch, OSB No.: 950942
                                       Attorney for Plaintiff

                                       **JURY TRIAL REQUESTED**